UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In Re: ) | |
| ) | Misc. Pro. No. 11-90003-jw |
| AbitibiBowater Inc., et al., ) | |
| ) | CASE NO. 09-11296 (KJC) |
| Debtors. ) | United States Bankruptcy Court for the |
| ) | District of Delaware |
| ) | |
| The Levin Group, ) | CHAPTER 11 |
| Party Issuing Subpoena, ) | |
| ) | |
| v. ) | |
| ) | |
| Ronald Lindsay and Post-Effective Date ) | |
| Claims Agent of AbitibiBowater, Inc., et ) | |
| al., ) | |
| Parties Objecting and Seeking ) | |
| to Quash Subpoena. ) | |
| ) | |

**OBJECTION AND MOTION TO QUASH SUBPOENA ISSUED TO
RONALD LINDSAY, FORMER GENERAL COUNSEL OF BOWATER
INCORPORATED**

Ronald Lindsay, General Counsel of SCANA Corporation, and together with Avidity Partners, LLC, as the post-effective date claims agent of AbitibiBowater, Inc. (the "Claims Agent"),[1] by and through their undersigned counsel, hereby files this Motion to Quash the Subpoena served on Lindsay by The Levin Group ("TLG"), a claimant in a bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware involving AbitibiBowater, Inc. and its affiliated debtors and debtors-in possession. A copy of the subpoena at issue is attached as Exhibit A.

In support of this Motion, movants respectfully state as follows:

---

[1] AbitibiBowater, Inc. and the Claims Agent share a common interest with regard to litigating the claim asserted by TLG. Accordingly, the privileges and work product protections asserted by AbitibiBowater may be asserted by the Claims Agent. See In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990)(describing joint defense or common interest doctrine).

**PRELIMINARY STATEMENT**

Lindsay is the former General Counsel, and Secretary of Bowater Incorporated one of two companies that combined in 2007 to form the lead debtor in the above-captioned cases, AbitibiBowater, Inc. He is currently Senior Vice President and General Counsel of SCANA Corporation in Cayce, SC. (Lindsay Aff. at ¶¶ 2, 4, Exhibit B.)

TLG filed a proof of claim against AbitibiBowater Inc. and its affiliated debtors and debtors-in-possession (the "Debtors") in their chapter 11 cases before the Delaware bankruptcy court. As set forth below, TLG's claim concerns contract litigation between TLG and Bowater, Inc., which was pending in the South Carolina Court of Common Pleas at the time Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), on April 16, 2009.

On November 23, 2010, the Delaware bankruptcy court confirmed the *Debtors' Second Amended Joint Plan of Reorganization (As Amended)*, dated November 23, 2010 [Docket No. 3938] (the "Plan"). On December 9, 2010 (the "Effective Date"), the Plan was consummated. Pursuant to the Plan, Avidity Partners, LLC ("Avidity Partners") is the Claims Agent for the Debtors' estates. Among other things, the Claims Agent is responsible for resolving the proof of claim filed by TLG.

The subpoena at issue was served on February 18, 2011 by Kevin J. Mangan, Esq., of Womble Carlyle Sandridge & Rice, PLLC. The Womble Carlyle law firm represented TLG in the prepetition lawsuit with Bowater, Inc. and continues to represent it before the Delaware bankruptcy court. In this lawsuit, TLG asserted a contract claim for compensation of $88.7 million for general financial consulting work, for which TLG had already received compensation of $600,000. The subpoena purports to command Lindsay to appear for a deposition at the

offices of Collins & Lacy, PC, on March 10, 2010 [sic]. The deposition will presumably concern the events at issue in the prior litigation.

Lindsay and the Claims Agent ask this Court to quash the subpoena. Throughout the events at issue in the prepetition litigation between TLG and Bowater, Lindsay served as General Counsel for Bowater. (Lindsay Aff. at ¶¶ 4-6.) Because Lindsay was acting as an attorney at all times with respect to the events at issue in the litigation, the deposition will unquestionably concern matters protected from discovery by the attorney-client privilege and possibly attorney work product. Consequently, the burden is on TLG to demonstrate the propriety and need for the deposition. See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987) (Attached as Exhibit C). TLG has not and cannot meet this burden. In addition, the contract at issue speaks for itself, and testimony regarding the "intent" of the parties to the contract would not be admissible in any event.

**GENERAL BACKGROUND**

AbitibiBowater Inc. ("AbitibiBowater" and together with its subsidiaries, the "Company") is incorporated in Delaware and headquartered in Montreal, Quebec. The Company was formed in 2007 from the merger of Bowater and Abitibi-Consolidated, Inc. On or about January 29, 2007, these companies issued a joint press release announcing their agreement to combine in an all-stock transaction (the "Combination") having, at the time, an estimated enterprise value in excess of $7 billion. (Harvey Aff. ¶ 11, Exhibit D.) Bowater specifically engaged Goldman Sachs and UBS to advise it in connection with the Combination, and those firms performed the "heavy lifting," executing the financial and investment analysis necessary for Bowater to make its determination to proceed with the Combination.[2]

---

[2] In this capacity, each of Goldman Sachs and UBS naturally attended meetings of Bowater's

TLG is a small consulting firm which provides financial advisory services to its clients through its managing partner, William Levin and an associate. In 2006, Levin sought out a contract with Bowater, which at that time was analyzing and exploring options for divesting non-core assets and, possibly, acquiring small mill operations to bolster its more profitable coated paper business. (Harvey Aff. ¶¶ 4-5.) On or about August 1, 2006, TLG and Bowater entered into an engagement letter (the "<u>Agreement</u>")[3] whereby Bowater paid TLG six monthly installments of $100,000 for general strategic and financial advice between August 1, 2006, and January 31, 2007. (<u>See</u> Harvey Aff. ¶ 10.)

Paragraph 2(b) of the Agreement provided that Bowater would also pay TLG a "Transaction Fee" in the event of "execution of definitive agreements and closing of a Transaction." The Agreement expressly defines the term "Transaction" to include <u>only</u> those "certain <u>acquisitions and divestitures</u> as specifically identified by Bowater to TLG in writing as a transaction <u>subject to Paragraph 2(b)</u>" (emphasis added). The Agreement further provided that, to the extent TLG would be entitled to a "Transaction Fee" on a matter specifically identified by Bowater in writing, the fee would be "equal to 2% of the enterprise value of the transaction, defined as the equity value plus assumed indebtedness."

TLG performed generalized and limited services in connection with the Combination, assisting Bowater's management team with basic modeling and other, lower-level analysis regarding the Combination. TLG lacked the institutional capacity and wherewithal to do more than this, as it did not have the financial or human resources to perform the array of services

---

Board of Directors where they advised the Board on critical matters related to the Combination. Goldman Sachs and UBS also issued fairness opinions to the Board that the consideration to be received by Bowater shareholders in the Combination was fair from a financial point of view. (<u>See</u> Harvey Aff. ¶ 13.)

[3] A true and accurate copy of the Agreement is attached hereto as Exhibit E.

4

Goldman Sachs and UBS were asked to perform. In contrast to Goldman Sachs and UBS, TLG never attended a Board meeting regarding the Combination, nor did it issue a fairness opinion in connection therewith. (See Harvey Aff. ¶ 15.) Bowater never specifically identified in writing to TLG that the proposed Combination was a "Transaction" subject to Paragraph 2(b) of the Agreement. (Harvey Aff. ¶ 15.)

Following announcement of the Combination, TLG contacted Bowater to negotiate a new engagement agreement (or modification to the existing Agreement) which would extend TLG's engagement and provide for a fee to TLG comparable to the fees paid to Goldman Sachs and UBS. When discussions broke down, TLG demanded payment of a Transaction Fee of $70 million under the Agreement, an arbitrary amount that bears no relationship to the Agreement itself (which, at enterprise value-times-2%, would have yielded a fee substantially higher than $70 million) or industry custom (given that Goldman Sachs and UBS were due $12 million and $8 million, respectively, based on formula percentages contained in their respective engagement letters).[4] By letter dated March 27, 2007, Bowater informed TLG that no Transaction Fee was owed because, among other reasons, the Combination was never identified in writing to TLG as a contract subject to paragraph 2(b) of the Agreement.

On June 18, 2008, notwithstanding the plain language of the Agreement requiring a writing identifying the proposed "Transaction," and the fact that no Transaction Fee could possibly be due pursuant to the Agreement until closing of the Combination (which did not occur until October 29, 2007), TLG filed a complaint against Bowater in New York state court asserting breach of the Agreement, fraud, *quantum meruit*, and unjust enrichment.[5] On July 18,

---

[4] The amount demanded by TLG subsequently increased to $88.7 million.
[5] On September 21, 2007, Bowater filed a motion to dismiss in the New York action based on the forum selection provision of the Agreement. The New York state court granted Bowater's

5

2007, Bowater commenced a declaratory judgment action against TLG in the United States District Court for the District of South Carolina pursuant to the forum selection provision of the Agreement. Shortly thereafter, Bowater came into knowledge of facts that undermined federal diversity jurisdiction and agreed to dismiss the federal action. On August 7, 2007, Bowater re-filed its declaratory judgment action in South Carolina state court. Bowater amended its complaint on September 21, 2007, to add causes of action against TLG for breach of contract and indemnification. The parties had undertaken some pre-trial discovery, but not depositions, at the time AbitibiBowater filed its Bankruptcy Petition.

As of the Petition Date, the Debtors suspended all work on the state court litigation with TLG. On September 9, 2009, the United States Bankruptcy Court for the District of Delaware denied TLG's May 14, 2009 Motion to Lift the Automatic Stay. Thereafter, as noted above, the Delaware bankruptcy court confirmed a plan of reorganization, pursuant to which Avidity Partners is the Post-Effective Date Claims Agent for the Debtors' estates. Among other things, the Claims Agent is responsible for resolving the proof of claim filed by TLG.

In preparation for a hearing on the claim, scheduled for March 29, 2011, TLG and the Claims Agent have conducted certain depositions. TLG deposed William Harvey, former Executive Vice President and Chief Financial Officer of Bowater, on February 7, 2011, and David Paterson, former Chief Executive Officer of Bowater on February 16, 2011. The Claims Agent deposed William Levin, TLG's principal, on March 1, 2011, and Chang Hwang, TLG's associate, on February 28, 2011. Notably, Levin testified in his deposition that he does not recall communicating with Lindsay regarding the engagement. (Levin Rough Dr. Tr. at 44:1-15; 137:10-24, Exhibit F.)

---

motion and dismissed TLG's complaint on January 23, 2008.

## ARGUMENT

**I.   TLG Cannot Demonstrate the Propriety and Need for a Deposition of Bowater's General Counsel; Consequently, This Court Should Quash the February 18, 2011 Subpoena.**

Federal Rule of Civil Procedure 45(c)(3), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9016, provides that an issuing court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies.  Fed.R. Civ.P. 45(c)(3).  Neither a subpoena, nor any other procedure in a civil action, may be used by a party to obtain privileged information.  The policy protecting privileged communications is simply too strong to allow subpoenas to undermine it.  9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2458 (3d ed. 2008).

Applying this rule, as well as the law governing privilege, courts require a special showing before permitting a party to depose the opposing party's attorney.  See, e.g. , Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986).  Whether a party should be permitted to depose in-house counsel for an opposing party turns on several considerations, including whether the attorney to be deposed has non-privileged information relevant to the requesting party's case, whether the party seeking the deposition has other, less intrusive, means of obtaining the same information, and whether the information sought is crucial to the preparation of the case. Shelton, 805 F.2d at 1326.  Similarly, district courts in the Fourth Circuit have held that a party seeking to depose a party's attorney must demonstrate the propriety and need for the deposition. See, e.g., N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987) (disallowing deposition of party's patent attorney).

Lindsay, as General Counsel for Bowater during the events at issue in the prepetition litigation between TLG and Bowater, would not have any non-privileged information relevant to

the dispute between Bowater and TLG. Lindsay gave legal advice to Bowater at the time Bowater entered into the Agreement with TLG. (Lindsay Aff. ¶ 6.) Lindsay communicated about the March 27, 2007 letter to TLG Bowater's outside counsel, who drafted that letter.[6] (Id. ¶ 8.) To the extent Lindsay may have factual knowledge about the Agreement and the post-Agreement dispute, his knowledge would have been gained solely through his capacity as counsel. It would therefore be difficult, if not impossible, for him to separate any non privileged knowledge he may have from the information obtained in the course of providing legal advice to Bowater. See, e.g., N.F.A. Corp., 117 F.R.D. at 86 (requiring party seeking deposition of counsel to "establish a legitimate basis for requesting the deposition," to include showing that information sought would not invade the attorney client or work product privileges and unavailability of other practical means of obtaining information).

Notably, TLG has already deposed David Paterson, former Bowater Chief Executive Officer, and William Harvey, then the Bowater Chief Financial Officer and currently the Chief Financial Officer of AbitibiBowater. These persons gave deposition testimony about the Agreement and the consulting work TLG performed pursuant to the Agreement. Moreover, Levin himself has testified that he has no recollection of discussing the engagement with Lindsay. (Levin Rough Dr. Tr. at 44:1-15; 137: 10-24.) Given these facts, and given that Lindsay's information regarding the Agreement is protected from discovery by the attorney-client privilege, TLG cannot make the required showing of propriety and need for a deposition of Bowater's former General Counsel.

---

[6] During the time TLG attempted to negotiate an additional fee for its consulting work, Bowater would likely have reasonably anticipated litigation. Consequently, any information Lindsay would have concerning this period of time would be protected from discovery not only by the attorney-client privilege but also by the work product doctrine.

8

Accordingly, this Court should quash the February 18, 2011 subpoena issued to Lindsay because it is an overt attempt to obtain privileged information to which TLG is not entitled. Fed.R. Civ.P. 45(c)(3).

**II.   The Documents at Issue in the Dispute Between TLG and Bowater Speak for Themselves; Consequently, the Testimony of Bowater's General Counsel Regarding these Documents is Not Relevant in Any Event, and This Court Should Quash the February 18, 2011 Subpoena.**

Federal Rule of Civil Procedure, Rule 45(c)(3), requires a court to quash or modify a subpoena that subjects a person to an undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). Whether a subpoena subjects a witness to an undue burden requires a balancing of the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. Insulate America v. Masco Corp._, 227 F.R.D 427, 432 (D.C.N.C. 2005) (Exhibit G.). Factors the court may consider when evaluating the balance of interests include whether the information is necessary and whether it is available from any other source. 9A, Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, § 2463.1 (3rd ed. 2008).

In this case, the information sought by the subpoena is not only privileged, it would be inadmissible under South Carolina's parol evidence rule. In South Carolina, "[t]he parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." Gilliland v. Elmwood Properties, 301 S.C. 295, 391 S.E.2d 577, 581 (S.C. 1990). When, as here, a written instrument is unambiguous, parol evidence is inadmissible to ascertain the meaning of the document. In re Estate of Holden, 343 S.C. 267, 275-76, 539 S.E.2d 703, 708 (2000).

TLG presumably seeks to depose Lindsay in an effort to explain the terms of Bowater's and TLG's Agreement. This Agreement, however, is unambiguous and any testimony offered to

9

explain or vary the terms of the Agreement would be inadmissible. See McGill v. Moore, 381 S.C. 179, 188, 672 S.E.2d 571, 576 (S.C. 2009) (Finding that in construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered from the four corners of the instrument.)

Because TLG is prohibited from introducing evidence to explain or vary the terms of the Agreement, permitting TLG to take the deposition of Lindsay would subject Lindsay to an undue burden. At this time, Lindsay serves as General Counsel for SCANA Corporation and has job responsibilities to fulfill. (Lindsay ¶ 9.) Requiring Lindsay to sit for a deposition, simply to ask him questions that he will be unable to answer in any event, is unreasonable under the circumstances. Any non-privileged testimony that Lindsay might give regarding the Agreement would be duplicative of testimony already given by Mr. Paterson or Mr. Harvey, or would inadmissible, and hence not necessary to TLG's case. This Court should therefore quash the subpoena. See, e.g., Riff v. Clawges, 158 F.R.D. 357, 359 (D.Pa. 1994) (finding the testimony of the Plaintiff's minor son unnecessary because his deposition would inject a parallel issue not remotely connected to the questions to be decided by the fact finder) (Exhibit H).

## CONCLUSION

For the above-stated reasons, Lindsay and the Claims Agent asks this Court for an order quashing the February 18, 2011 subpoena issued to Ronald Lindsay.

>NELSON MULLINS RILEY & SCARBOROUGH LLP
>
>By: s/B. Keith Poston
>Stephen G. Morrison
>Federal Bar No. 3583
>E-Mail: steve.morrison@nelsonmullins.com
>Susan M. Glenn
>Federal Bar No. 5240
>E-Mail: susie.glenn@nelsonmullins.com
>James J. McGovern
>Federal Bar No. 2827
>E-Mail: jim.mcgovern@nelsonmullins.com
>B. Keith Poston
>Federal Bar No. 10599
>E-Mail: keith.poston@nelsonmullins.com
>1320 Main Street / 17th Floor
>Post Office Box 11070 (29211-1070)
>Columbia, SC  29201
>(803) 799-2000
>
>Attorneys for Ronald Lindsay and Avidity Partners, as Post-Effective Date Claims Agent .

Columbia, South Carolina

March 3, 2011